CONSOLIDATED FISHERIES COMPANY, a corporation of the State of Delaware, THOMAS H. HAYES, an individual, and RICHARD C. HAYES, an individual,

*vs.*

CONSOLIDATED SOLUBLES COMPANY, a corporation of the State of Delaware, and DAVID LEVIN, an individual.

*Supreme Court, On Appeal, April 28, 1955.*

*John Van Brunt, Jr.,* Wilmington, for appellants.

*Samuel R. Russell,* Georgetown, and *William Ginsburg,* Philadelphia, Pa., for appellees.

SOUTHERLAND, Chief Justice, WOLCOTT, Justice, and LAYTON, Judge, sitting.

WOLCOTT, Justice: After the filing of the opinion in this cause, *ante p.* 125, 112 *A.2d* 30, both the appellants (hereafter called Fisheries) and the appellees (hereafter called Solubles) petitioned for re-argument, or for modification of the directions with respect to the special mandate to be entered. Upon considering the petitions for re-argument, we are of the opinion that some modification of our directions with respect to the mandate is required, but, since our views are unchanged upon the basic issues of the case, we will dispose of the petitions by means of this supplementary opinion, and will not grant re-argument.

Solubles asks for re-argument upon our holding that since Fisheries and Solubles were joint adventurers, Fisheries is entitled to be reimbursed out of profits for sums spent in the construction of the plant in excess of the total amount of $70,000, the maximum liability of Solubles. Solubles urges, as a reason for re-argument, that one of the arguments made by it to support its position that all sums spent in excess of $70,000 for plant construction were Fisheries' sole responsibility, was overlooked by us. This argument is that Fisheries under the agreements was the agent of Solubles and in expending more than $70,000 for plant construction had transgressed the bounds of its agency. This argument, however, is disposed of by our finding that Fisheries and Solubles were joint adventurers and that no agency relationship existed.

Solubles also urges that in an appeal from Chancery we may not examine the record to reach independent conclusions of fact, and that in making certain findings of fact and in overruling certain findings of the Vice Chancellor, we violated the rule laid down in *Blish v. Thompson Automatic Arms Co.,* 30 *Del.Ch.* 538, 64 *A.2d* 581, to the effect that if there is sufficient oral testimony in the record to support the findings of the court below, such findings will not be disturbed on appeal. We do not understand that our statement of our power

sitting in review of Chancery judgments conflicts with the rule laid down in the *Blish* case. On the contrary, we expressly stated that if the findings of the court below found support in the record, we would adhere to them. We were and are of the opinion that the record in the cause does not contain evidence of sufficient probative value to support the findings below. We are thus free in this cause, as in all Chancery appeals, to examine the record and make our own findings if, in our discretion, the record permits us to do so.

Thirdly, Solubles argues that our conclusion that it did not rely on any representations of construction cost made by the agent of Fisheries does not apply to the increase by the agreement of May 31 of the maximum liability of Solubles from $50,000 to $70,000. We see nothing in this argument to change our conclusions with respect to the question of whether or not Solubles in fact relied to any extent upon the representations of cost made by Fisheries. We think it clear that no reliance in fact took place, and we think it clear also that the increase in the maximum liability of Solubles did not change the positions of the parties to any extent whatsoever.

Finally, Solubles asks that we make it clear that an $8,000 item for the installation of storage tanks, which the court below found had never been installed, be expressly declared an improper item to be allowed Fisheries on the accounting relating to the construction cost of the plant. We had thought there was no doubt that such was the effect of our opinion, but in order to remove any possible confusion on the point, we expressly affirm this finding of the Vice Chancellor.

Solubles also asks us to make it clear that upon further accounting with respect to the cost of construction of the plant, it is free to attack upon the grounds of fraud and error the records of Fisheries offered by it to support its contentions in the accounting. We had supposed that there was no question of Solubles' right to do so, but again to remove any possible confusion, we expressly state that upon further accounting Solubles is free to have adjudicated its claim of fraud and error with respect to the records of Fisheries.

Other points upon which both parties seek clarification relate to our rulings upon the allowance to Fisheries of the costs of electricity

supplied, fuel oil supplied, overhead costs, and the taxation of costs by the court below against Fisheries.

We have given further consideration to these items and agree that our findings with respect to them need clarification. We must say that the record in this accounting is most confusing. The record is voluminous and the confusion results from the fact that the parties were permitted to try the issue of Solubles' right to an accounting and, at the same time, to try some of the items of the accounting, itself. The result of proceeding in that way in an accounting case is to make it difficult to deal with the factual contentions advanced by both sides, since the issue of the right to an accounting has been completely tried while the issue of the accounting, itself, has been only partially tried, despite the fact that in some phases they tend to overlap. In view of this, we set forth the following principles for the instruction of the court below upon the further accounting which will be necessary in this cause:

1. The interlocutory judgment of the Vice Chancellor left open for further accounting the issue of the cost of operation of the Solubles plant. This issue is still open for decision and the taking of further testimony.

2. Our reversal of the Vice Chancellor's ruling on the liability for the cost of construction of the plant, requires further accounting upon this issue. Upon this phase of the accounting, also, the parties are free to offer additional evidence.

3. The result is that the whole cause is open for adjudication except as to those issues determined by the Vice Chancellor and not appealed from, or as to those issues upon which we have affirmed his determination. Fisheries is required to state an account of the cost of construction of the plant and of the cost of operation of the plant after construction.

4. Solubles has the right to file exceptions to Fisheries' entire account, or any phase of it.

5. In stating the account relating to the cost of construction of the plant, the following principles, *inter alia,* shall govern:

(a) Fisheries should be allowed an item for overhead of 10% of the actual cost of labor and materials used in the plant construction.

(b) Fisheries should be allowed an item for the actual cost of supplying equipment used in the construction of the plant. This actual cost should be ascertained from the time cards kept by Fisheries so far as they are shown to be accurate and sufficient. To the extent that the time cards do not support the charge for rental of equipment, expert estimates may be received as to the cost of the supplying of such equipment to the extent only that such testimony is necessary to supplement Fisheries' records, and to the extent only that such estimates are based upon actual cost to Fisheries.

6. In stating the account relating to the cost of operation of Solubles' plant, the following principles, *inter alia,* shall govern:

(a) The amount of fuel oil supplied by Fisheries shall be determined by actual meter readings in so far as such records are available. Such records, only to the extent that they are deficient, may be supplemented by expert testimony relating to the days not covered by meter readings.

(b) The amount of electricity furnished by Fisheries shall be that found by the court below, and the rate to be charged shall be fixed at the actual cost to Fisheries of supplying such electricity. This rate shall be determined to the extent possible from Fisheries' records. To the extent that these records are missing or inaccurate, they may be supplemented by expert testimony, estimating the actual cost of such electricity to Fisheries.

7. In filing exceptions to the account to be stated by Fisheries, Solubles is not bound by the records of Fisheries. It is at liberty to attack them upon the grounds of fraud and error.

8. In adjudicating the accounting, the court below should bear in mind that Fisheries, as a joint adventurer with Solubles, and as supervisor of the construction and operation of the plant, was under a fiduciary duty to treat Solubles, its co-adventurer, with all good faith.

9. Since the result of the proceedings below, which was affirmed in this phase on appeal, is that Solubles has established its right to an accounting from Fisheries, the costs below taxed against Fisheries will stand.

To the extent indicated, the directions contained in the opinion of February 28, 1955 with respect to the contents of the special mandate are modified. Fisheries is directed to submit on notice a form of special mandate in accordance with the modified directions.

At the hearing on the form of mandate, both Fisheries and Solubles are free to bring on for determination their respective applications under Rule 25(2), *Del.C.Ann.,* for the taxing of the cost of printing or duplicating appendices, which have been certified by the parties to the Clerk of this Court.